340 A.2d 128.

STATE *vs.* ALPHONSE MANCINO.

JUNE 27, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

Roberts, C. J. These are three criminal complaints charging the defendant, Alphonse Mancino, first, with operating a motor vehicle "to the left half of the roadway of sufficient width" in violation of G. L. 1956 (1968 Reenactment) §31-15-1 (C.A. No. 72-113); second, with operating a motor vehicle on a public highway "* * * at a clocked speed of 55 MPH in excess of the 35 miles per hour legally established speed limit" in violation of §31-14-1 (C.A. No. 72-114); and, finally, with operating a motor vehicle on a public highway "* * * while under the influence of an intoxicating liquor, to a degree which rendered him incapable of safely operating a vehicle" in violation of §31-27-2 (C.A. No. 72-116). A trial to a jury in the Superior Court during January 1974 resulted in his conviction on each of the three counts above specified.[1] From these judgments the defendant is prosecuting an appeal to this court.

It appears from the record that defendant, who is an architect, resides in and maintains his professional office in the town of Barrington. At trial he testified that on the morning of January 11, 1972, he was in his office working until about 3 a.m. and that shortly after leaving his

---

[1]The defendant was also charged with assaulting a police officer at the time of his apprehension on January 11, 1972, a charge of which he was found not guilty by the jury at the trial during January 1974.

office to return to his home he was apprehended and subsequently charged with the violations set out above.

A police officer, Albert K. Antonio, testified that early in the morning of January 11 he observed defendant's car proceeding in a southerly direction along the Wampanoag Trail. The officer followed defendant's car to County Road, a two-lane highway, where he noticed that the car "drifted" over the center line of the road. At that point he clocked defendant at a speed of 55 m.p.h. in a 35 m.p.h. zone. After his apprehension, defendant at the police station submitted to two breathalyzer tests, the first of which registered .10 percent of alcohol by weight in defendant's blood and the second, taken some 30 minutes later, registered .09 percent.[2]

The record discloses that when trial began, the trial justice inquired: "Does the defendant persist in his plea of not guilty?" When counsel for defendant appeared not to have understood the inquiry, the trial justice again said: "Does the defendant persist in his plea of not guilty in these four charges?" At the time these inquiries were made, the jury panel from which the jurors were ultimately selected was in the courtroom. The defendant's motion to pass the case on the ground that he had been prejudiced by the inquiries made in the presence of the prospective jurors was denied. In so contending, defendant directs our

---

[2]The statute provides that the amount of alcohol in a person's blood as shown by chemical analysis shall give rise to the following presumptions: (1) If at the time there was .05 percent or less by weight of alcohol in the person's blood, it shall be presumed that the person was not under the influence of intoxicating liquor; (2) if there was in excess of .05 percent but less than .10 percent by weight of alcohol in the person's blood, no presumption shall arise that the person was or was not under the influence of intoxicating liquor; and (3) if there was .10 percent or more by weight of alcohol in a person's blood, it shall be presumed that the person was under the influence of intoxicating liquor. General Laws 1956 (1968 Reenactment) §31-27-2.1(c).

attention to the language of this court in *State* v. *Papa,* 32 R. I. 453, 80 A. 12 (1911), and *State* v. *Nunes,* 99 R. I. 1, 205 A.2d 24 (1964).

It is true that judicial comment in the presence of the jury should be closely scrutinized to determine its potential for creating prejudice in the minds of the jurors against the defendant. It does not follow, however, that every comment made by the court, ambiguous or even critical in its nature, must invariably be held to have created in the minds of the jurors an irreversible conviction of a defendant's guilt. When a defendant contends that the trial justice was prejudiced against him to such a degree as to impair the fairness of the trial, he has the burden of establishing the existence of such prejudice in the mind of the trial justice. *State* v. *Crescenzo,* 114 R. I. 242, 332 A.2d 421 (1975); *State* v. *Buckley,* 104 R. I. 317, 244 A.2d 254 (1968).

There is no valid reason why that rule should not apply to situations in which the defendant contends that the comment or conduct of the trial justice necessarily had the effect of creating such prejudice in the minds of the jurors. In our opinion, defendant here has not met that burden. The circumstances in which the inquiries were made are not persuasive that they created such prejudice. The thrust of the argument is that the use of the word "persist" so revealed the court's belief in defendant's guilt that it necessarily would have the effect of irreversibly persuading the jury of that guilt. With this argument we do not agree and conclude that the trial court did not err in denying the motion to pass.

Neither can we agree that the presence of an armed police officer at counsel table during the trial deprived defendant of a fair trial. We do not disagree with the thrust of the opinion of the New Hampshire court in *State* v. *Whipple,* 114 N. H. 537, 322 A.2d 917 (1974). On the

contrary, we recognize that, in some circumstances, the presence of armed police officers in a courtroom or, for that matter, a display of weapons in a courtroom in the presence of the jury could generate such prejudice. However, nothing in the record here discloses any circumstance or condition which would persuade us that the presence of the police officer at counsel table prejudiced defendant's right to a fair trial.

The defendant contends also that the trial justice erred in overruling his objection to the admission of the arresting officer's testimony that from his observation of the speedometer in the police cruiser, defendant was operating at 55 m.p.h. The defendant argues that a prior showing of the operational efficiency of the speedometer in the police vehicle is required before evidence of another vehicle's speed based on a reading of that speedometer can be admitted. The state, however, argues that any attack on the accuracy of speed-testing equipment is an affirmative defense that must be pleaded and raised by the defendant. We do not agree.

In *State* v. *Barrows*, 90 R. I. 150, 154, 156 A.2d 81, 83 (1959), we held that "* * * the testimony as to the speed at which the defendant's automobile was being operated, based on an observation of the speedometer readings in the arresting officer's motor vehicle, is admissible in evidence upon a showing that the operational efficiency of the device has been tested by an appropriate method within a reasonable period of time." We have reconsidered this holding and, after considering intervening decisions from other jurisdictions, *see, e.g., State* v. *Tomanelli*, 153 Conn. 365, 216 A.2d 625 (1966), we reaffirm it here.

By our holding, we simply require, as part of the state's prima facie case, that a showing be made that the speedometer used to clock the defendant was tested against another speed-testing standard and that the speedometer

was operating properly at the time of the alleged violation. We adhere to this rule as an appropriate middle ground between the extremes of presuming that a police cruiser speedometer is accurate and requiring evidence of the accuracy of the speed-testing device against which the police cruiser speedometer is tested. *See Whitehead* v. *Lynchburg,* 213 Va. 742, 195 S.E.2d 858 (1973). Once the state has presented its case as outlined above, the defendant may mount, as an affirmative defense, an attack upon the accuracy of the device used as the standard against which the police cruiser speedometer was tested. *See State* v. *Tomanelli, supra* at 372, 216 A.2d at 630.

It is clear from the record that in the instant case the state did not introduce any evidence showing the operational efficiency of the speedometer of the arresting officer's vehicle, and we, therefore, conclude that the admission of the challenged testimony was error.

The defendant contends also that the prosecutor in his summation to the jury at the close of trial made statements designed to destroy defendant's credibility that were so inherently prejudicial as to deprive him of a fair trial. The defendant at trial had testified that he had consumed two cans of beer on the night of his arrest. The prosecutor in his summation, referring to this testimony, said: "I'm going to ask you if you've ever known a drinker who had more than a few beers. That defense that I only had two beers has been used in drunken driving cases from time immortal. That defense is so old it has whiskers." The defendant objected immediately to the prosecutor's remarks, and his objection was overruled. It is clear from the record that defendant did not request of the court a

cautionary instruction to the jury to disregard the remarks, and no such instruction was given by the court.[3]

The state argues that the remark of the prosecutor was not improper in that it constituted a reasonable inference that could be drawn from the testimony of defendant. The defendant, as we understand him, argues that the language used by the prosecutor was prejudicial because it misled and confused the jury in that he was attributing to himself the status of an expert in criminology. However that may be, it is our opinion that the controlling issue in this case is whether the prosecutor's comment was so inherently prejudicial as to require the giving of an immediate cautionary instruction adequate to eradicate any resulting prejudice from the minds of the jurors.

In *State* v. *Mancini*, 108 R. I. 261, 274 A.2d 742 (1971), this court engaged in a comprehensive analysis of a number of our decisions dealing with the prejudicial effect of comments made by prosecutors in the presence of the jury and challenged as being so inherently prejudicial as to deprive the defendant of his right to a fair trial. While conceding that there is no formula for the precise ascertainment of the proper bounds of such comment by a prosecutor, we made clear our recognition that in many instances prejudice inheres where the remarks are totally extraneous to the issues in the case and tend to inflame and arouse the passions of the jury.

In *Mancini* we noted also that ordinarily a failure to request a cautionary instruction at the time the remarks were objected to will preclude a defendant from raising

---

[3]The defendant also objected expressly to a comment by the prosecutor that two beers "[c]ertainly wasn't enough alcohol * * * to get that kind of reading on the breathalyzer machine." It is our opinion, however, that this objection is without merit, it being clear that the statement made was a reasonable inference of which the testimony was susceptible.

a question in this court as to the prejudicial effect thereof. However, we recognized that there can be exceptions to the requirement that a request for such a cautionary instruction be made. For instance, where the trial justice, upon objection, concluded that the challenged remarks were proper, it obviously would be an idle gesture to require a defendant to request such a cautionary instruction. Likewise, the failure to make such a request will be excused where the comment exceeded proper argument in so flagrant a manner that even a cautionary instruction would not have sufficed to eliminate the prejudice resulting therefrom and thus deprive the defendant of a fair and impartial trial.

Here, of course, defendant did not make an immediate request of the court for the requisite cautionary instruction. It appears that when defendant objected to the comment, the trial justice summarily overruled that objection. In such circumstance had a request been made for the instruction, obviously it would have been denied. This brings the case, in our opinion, within the purview of *State* v. *Plante,* 111 R. I. 386, 302 A.2d 804 (1973), and persuades us that, despite the absence of the request, we should review the prejudicial potential of the comment.

In *Plante* the comment challenged as being inherently prejudicial charged the witness with being a "liar." The obvious innuendo to be attributed to the comment of the prosecutor in the instant case was that defendant, in testifying that he had consumed only two cans of beer, was likewise a liar. Conceding, as we must, that such comment had a high potential for the generation of prejudice, we cannot say that it was per se so inherently prejudicial as to irreversibly impair his right to a fair trial or, for that matter, that the prejudice, if any, that resulted could be cured only by the giving of an immediate and adequate cautionary instruction. We are buttressed in this conclu-

sion by our opinion that in the charge given by the trial justice to the jury upon submitting the case to them, the relevant instructions were sufficient to inform the jury that the credibility of the witnesses and the weight to be given their testimony was a matter entirely within their province.

In the first place, the jury was informed that it was free to consider the evidence "* * * in the light of your experiences as prudent, careful, experienced men and women of the world. You may draw inferences and deductions from the evidence such as reasonable men and women would be expected to draw from such evidence." Further, he made clear to the jury that it was not to consider any comments of the prosecutor as evidence. He said: "It is your recollection of the testimony that counts in this case, not what the lawyers or the Court might have said about that testimony. I want you to bear in mind that any arguments or opening statements or any statements at all made by counsel during this trial are not evidence and should not be considered as such by you."

Again, conceding the impropriety of the prosecutor's comment, we cannot conclude that its prejudicial possibilities were not substantially eroded by the relevant portions of the charge given the jury. Neither, therefore, can we conclude that defendant's constitutional right to a fair trial had been impaired as a result of the comments being made in the presence of the jury.

Finally, there is no merit, in our opinion, in the defendant's contention that the state failed to prove beyond a reasonable doubt that he operated his vehicle to the left of center in violation of §31-15-1. This argument rests on the fact that the statute sets out exceptions pursuant to which the operation of a vehicle to the left of center may be lawful. It is well settled, however, that in a criminal case the burden of the state extends no further than to

prove beyond a reasonable doubt only the essential constituent elements of the offense charged. *State* v. *Deans,* 93 R. I. 266, 174 A.2d 666 (1961); *State* v. *Stallman,* 78 R. I. 90, 79 A.2d 611 (1951). The statutory exceptions obviously do not establish elements of the offense of driving to the left of center, and the burden of proving that one of them comes within such an exception is, as an affirmative defense, on the defendant.

The appeals of the defendant in C.A. No. 72-113 (operating to the left of center) and in C.A. No. 72-116 (operating under the influence) are denied and dismissed and the judgments appealed from are affirmed; the appeal of the defendant in C.A. No. 72-114 (operating at an excessive speed) is sustained and the judgment appealed from is reversed; and the cases are remanded to the Superior Court.

*Julius C. Michaelson,* Attorney General, *Judith Romney Wegner,* Special Asst. Attorney General, for plaintiff.

*D. A. St. Angelo,* for defendant.