302 A.2d 804.

STATE *vs.* DONALD ALBERT PLANTE.

APRIL 12, 1973.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

DORIS, J.   These are two criminal complaints and warrants which were consolidated for trial to a Superior Court justice and jury in December, 1970.[1]   The jury returned a verdict of guilty to each complaint.   They are before this court on defendant's bills of exceptions which were season-

---

[1] The cases were before the Superior Court on appeal from conviction in the District Court.

ably prosecuted following the conviction of the defendant in each case.

On the evening of July 18, 1970, shortly after 9:30 p.m. Brian Gordon Berry heard a noise outside his home which sounded like someone taking hubcaps off his car, a 1965 Oldsmobile station wagon. He directed his wife to call the police and went outdoors to investigate. There he observed a man bent down by the right front wheel of the Oldsmobile. Berry called out to the intruder who, turning from the station wagon, approached and assaulted him. On knocking Berry to the ground, the intruder took flight and called to someone else in another car to do likewise. Berry scrambled to his feet in time to see the other car rounding the corner of the house. It appeared to be the same type of vehicle as his own and bore Rhode Island registration QP-2.

The police officer who arrived at Berry's home in a cruiser was told by the latter of the attempted larceny of his hubcaps and the assault on him. Berry also gave the officer the registration number QP-2 as that of the vehicle which had been operated by someone to whom Berry's assailant had shouted. This officer then cruised the area and observed the car bearing registration QP-2 standing unattended in a driveway leading to an open-air theatre. Near this vehicle, however, was another car which was surrounded by some six people. The officer inquired of them as to who owned the automobile bearing registration QP-2. The defendant, who was one of the six individuals at the scene, acknowledged the car to be his.[2]

On learning that defendant was the owner of QP-2, the police officer called the officer who was taking a report from

---

[2]It is of probative significance that the vehicle bearing registration plates QP-2 was, like Berry's vehicle, a 1965 Oldsmobile station wagon which, unlike Berry's vehicle, had no hubcaps.

Berry to request that Berry be brought to the scene. On arriving, Berry identified defendant as his assailant.

In consequence of the foregoing, defendant was charged with attempted larceny of the hubcaps and with an assault and battery on Berry.

At trial, defendant produced an alibi witness who, on direct examination, testified, in essence, that he and defendant were together at a place removed from the scene of the offenses and were so together at the time the offenses were committed.

On cross-examination, however, the alibi witness was confronted with a signed statement in which he had stated that he, and not defendant, had committed the offenses in question.

The defendant objected to the use of the signed statement by the prosecution, but this objection was overruled and the witness admitted having signed the statement in question. When questioned by the prosecution as to whether his testimony on direct examination or the signed statements were the truth, the witness then testified that they were true and that he, not defendant, had in fact committed the offenses.

In his summation to the jury counsel for the state, making reference to the witness's direct evidence testimony vis-à-vis his written statement, said: "Do you believe this key witness they have? On October 27th he says one thing; on December 15th he says another[3] ***that man is on trial right there and Mr. Rameaka, his brother-in-law, is only a witness for him. He's a liar."

At this point, counsel for defendant objected to the prosecution's categorization of the witness as a liar. The

---

[3]October 27, 1970, refers to the date of the signed statement, whereas December 15, 1970, was the date on which the witness offered the alibi testimony.

trial justice overruled this objection and counsel for defendant excepted. Continuing his summation, counsel for the state remarked, "Look at the evidence and the facts and the facts are this is an Oldsmobile hubcap. The defendant had no hubcaps, that his car was an Oldsmobile, that he put a liar on the stand as a witness and expects you to believe it." Counsel for defendant again objected to this categorization and was again overruled by the trial justice. Exception to this ruling by counsel for defendant was duly noted.

It is the two exceptions heretofore narrated on which defendant predicates his appeals to this court. In support thereof defendant contends that reference to the alibi witness as "a liar" by counsel for the state deprived defendant of a fair and impartial trial, in that said reference was merely an opinion, not based on the facts in evidence.

So contending, he calls our attention to *Gibson* v. *United States,* 403 F.2d 569 (D.C. Cir. 1968); *People* v. *Perez,* 58 Cal.2d 229, 373 P.2d 617, 23 Cal. Rptr. 569 (1962); *State* v. *Miller,* 271 N. C. 646, 157 S.E.2d 335 (1967); *State* v. *Parker,* 235 Ore. 366, 384 P.2d 986 (1963).

It is to be noted that defendant cites no Rhode Island cases and this, in all probability, is because the exact question has not previously been considered by this court. However, we have had occasion in the past to consider the alleged tainting of a fair trial process by counsel who, in summation to the jury, has expressed an opinion which, it was alleged, was predicated on a personal belief not supported by evidence in the record. *See State* v. *Mancini,* 108 R. I. 261, 274 A.2d 742 (1971); *State* v. *Kozukonis,* 100 R. I. 298, 214 A.2d 893 (1965); *State* v. *Werner,* 87 R. I. 314, 140 A.2d 502 (1958).

In each of those cases, this court made clear that prejudicial remarks made by counsel in summation to a jury, which remarks were unrelated to facts in evidence could be the

basis for a holding by this court that the objecting litigant had been deprived of a fair and impartial trial.

Consequently, we have no hesitancy in holding that referring to a witness as "a liar" by counsel in his summation is violative of the fair trial concept when such reference is unrelated to anything in evidence. The question here, then, is whether counsel for the state labeling the alibi witness as "a liar" was the expression of an opinion not based on evidence from which the jury could form their own conclusion. In the prosecution of his bills of exceptions before this court, defendant makes two interrelated contentions. His first such contention is that counsel for the state's categorization of the alibi witness as "a liar" was so prejudicial as to deny defendant a fair and impartial trial. This being so, he next contends, it was prejudicial error for the trial justice to permit such categorization over defendant's objections.

Before turning to a consideration of the merits of these contentions, we deem it advisable to comment on the procedural aspects of defendant's objections and the trial justice's rulings thereon.

In *State* v. *Mancini, supra,* this court pointed out that when remarks are made by counsel in summation to a jury, which remarks adversary counsel considers improper, it is the duty of the adversary to request cautionary instructions from the trial justice. This request having been made, we further pointed out, it is the duty of the trial justice, if he agrees with the objection, either to instruct as requested or to pass the case if in his judgment cautionary instructions would not suffice to insure defendant a fair and impartial trial.

On the other hand, if a request for cautionary instructions is made and in the judgment of the trial justice the remarks objected to were not improper, the trial justice will deny the motion for cautionary instructions.

In either event there will be a ruling by the trial justice to which exception may be taken by the movant if, in his judgment, the ruling of the trial justice is prejudicial error. It is this exception which, duly prosecuted, brings the alleged errors on the record for consideration by this court.

Here, defendant made no such request. However, in *Mancini*, we also held, in substance, that this court would not hold an appellant to strict compliance with the procedural process if it were clear from the record that strict compliance with such procedure would be unavailing.

As heretofore narrated, when defendant objected to the prosecutor's remarks, the trial justice summarily stated "overruled." In such circumstances, we think it obvious that a request for cautionary instructions would have been denied. Consequently, we are of the opinion that the exceptions here prosecuted do raise for this court the question of whether the comments complained of served to deprive defendant of a fair and impartial trial, in that such comments were unrelated to evidence to be considered by the jury in their deliberation.

But, we think it equally clear that, considered on their merits, defendant's contentions lack substance. In referring to the alibi witness as "a liar," counsel for the state pointed to the evidence on which he based his categorization. That evidence was before the jury for them to consider, and in so considering to draw their own conclusion. It might be that, in the light of such evidence, the jury would gain that impression of the witness for which counsel for the state was arguing. On the other hand they might not. In any event, should they reach that conclusion it would be based on the evidence to which counsel for the state pointed and not on an assumption that the prosecution had knowledge of which the jury was unaware.

The defendant's exceptions in each case are overruled and

each case is remitted to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Benedetto A. Cerilli, Jr.,* Special Counsel to the Public Defender, for defendant.